# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JERONE MCDOUGALD,                                    Case No. 1:17-cv-464

        Plaintiff,                                    Barrett, J.
                                                                   Bowman, M.J.

      v.

RON ERDOS, et al.,

        Defendants.


## REPORT AND RECOMMENDATION

### I. Background

Plaintiff, a prisoner at the Southern Correctional Facility (SOCF) and frequent litigant in this Court,[1] filed this §1983 action against various SOCF officials and employees, including Defendants Warden Ron Erdos, Nurse Teresa Hill, C/O Ms. Williams, Nurse Janis Reiter, Lt. Humphrey, Deputy Warden William Cool, and John Doe Defendants. Although Plaintiff litigates about many things, in this case he complains chiefly about a mandatory blood draw to which he was subjected on July 3,

---

[1] *See, e.g.,* Case Nos: 1:08-cv-744 (claim of excessive force during arrest); 1:16-cv-317 (First Amendment retaliation claims); 1:16-cv-497 (Eighth Amendment claims regarding use of pepper spray on multiple dates); 1:16-cv-500 (claim relating to medical care for colitis, including allegedly prescribed high calorie diet); 1:16-cv-633 (case transferred to Eastern Division, reopened as 2:16-cv-545); 1:16-cv-900 (claims regarding use of pepper spray and retaliation); 1:16-cv-1099 (claim regarding use of pepper spray and other force); 1:17-cv-72 (above-captioned case regarding involuntary blood draw); 1:17-cv-91 (alleged violation of due process rights in RIB hearing, and retaliation claim); 1:17-cv-95 (claim regarding use of pepper spray); 1:17-cv-124 (claim regarding use of pepper spray); 1:17-cv-127 (claim regarding "flood of biocontaminate" in cell); 1:17-cv-196 (retaliation claim); 1:17-cv-464 (involuntary blood draw), 1:18-cv-80 (pepper spray incident of August 7, 2017); 1:18-cv-93 (September 28, 2017 alleged attack and denial of medical treatment); 1:18-cv-135 (same September 28, 2017 incident); 2:16-cv-545 (claim regarding failure to provide kosher meals). In addition, Plaintiff previously has filed two petitions for habeas corpus: Case Nos. 1:11-cv-790; 1:16-cv-565. The undersigned recently noted in Case No. 1:16-cv-500 that Plaintiff appears to be equally litigious in state court.

2017, which he believes was in violation of Ohio prison policy and a number of his constitutional rights. The undersigned takes judicial notice of the similarity of the instant allegations with the allegations presented in one of Plaintiff's prior recent cases, *McDougald v. Stone, et al.*, Case No. 1:17-cv-72, which involved Plaintiff's complaints about a prior involuntary blood draw on January 4, 2017. In Case No. 1:17-cv-72, this Court granted the motion of the institutional defendants to dismiss all claims against them for failure to state a claim. *See id.*, Docs. 20, 26.[2]

The complaint in the instant case alleges that on July 3, 2017, Plaintiff was awoken by a John Doe correctional officer and told he was required to submit to a mandatory blood draw. Plaintiff requested a refusal of medical treatment form, but the John Doe officer instead summoned Lt. Humphrey. The John Doe officer and Lt. Humphrey asked Plaintiff to cuff up. Plaintiff continued to ask for a medical refusal form. Lt. Humphrey allegedly responded that he would "be back for my nigger ass and he stated he is gonna teach me a lesson for filing lawsuits against his staff and I was informed that the Warden and Deputy Warden of Operations will cover up for there [sic] actions." (Doc. 18, Amended Complaint at 4). Lt Humphrey then left and returned between 9 and 10:15 am with C/O Williams and 5-6 suppression team members and another John Doe officer. (*Id.*). After Plaintiff again cuffed up, he alleges that he was grabbed by the unspecified persons and "my arms and wrist along with my fingers was bent excessively" while he was "forcefully escorted to medical infirmary" by Humphrey, Williams, and the suppression team members. (*Id.*)

---

[2]Plaintiff filed a Notice of Appeal on April 2, 2018.

Once he arrived at the infirmary, Nurse Teresa Hill was summoned and Plaintiff was placed in a chair while a needle was "jammed in the top of my arm," and when no blood could be obtained, Nurse Hill "jammed the needle in my hand causing pain." (*Id.*) Plaintiff alleges that while he was being escorted back to his cell, his wrist and fingers were again "bent excessively causing me pain and I requested medical treatment and I was told by Nurse Reiter that I would not be treated due to filing a lawsuit against her…." Nevertheless, Plaintiff submitted a sick call slip and was seen by medical on July 5, 2017. (*Id.* at 2). He alleges that (non-party) Nurse James documented "swollen wrists" and "lacerations on his wrist due to the tight handcuffs," and provided him with "ice and pain meds, and a[n] x-ray was ordered." (*Id.*) Plaintiff further alleges a "use of force report" was submitted to the Deputy Warden (Defendant William Cool), who found that no further action was required. (*Id.*)

Plaintiff alleges that he was forced to undergo a similar allegedly unlawful blood draw on January 4, 2017, at which time the attending nurse also "jammed" a needle into his arm. He alleges that on that occasion, additional SOCF officials bent his wrist, arms in an awkward position, causing "serious pain," and left him on the floor "in agonizing pain in a medical cage" without medical treatment. (*Id.* at 5). Days later, Plaintiff alleges that Warden Cool reviewed a Use of Force report regarding the incident, but recommended to Warden Erdos that no further action be required.

Plaintiff alleges that Warden Erdos and Defendant Cool, by reviewing the use of force reports on both January 4, 2017 and July 5, 2017 and concluding that no further action was required, are liable for "creating a policy or custom under which excessive force was allowed." (*Id.* at 6). Plaintiff alleges that Defendants violated his First, Fourth,

Eighth, and Fourteenth Amendment rights, bringing claims against all Defendants in their individual capacities and against Defendants Erdos and Cool in their official capacities. (Doc. 18 at 5-6). In lieu of filing an Answer, all Defendants herein have now moved to dismiss this second "blood draw" case for failure to state a claim. For many of the same reasons discussed in the R&R filed in Case No. 1:17-cv-72, Defendants' motion to dismiss this case should be granted.

## II. Analysis

### A. Standard of Review

Defendants' motion to dismiss has been filed under Rule 12(b)(6), prior to the commencement of any discovery. In considering the motion, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). Based upon liberal pleading standards under Rule 8 and the standard of review, it is far more common for cases to be disposed of on motions for summary judgment, following a period of discovery, than on Rule 12(b)(6) motions to dismiss. Nevertheless, where a defendant has filed a well-supported and meritorious motion to dismiss that clearly illustrates that the plaintiff has failed to state a claim, the motion will be granted. Having considered Defendants' well-supported motion in this case, together with Plaintiff's response and Defendants' reply, the undersigned concludes that the motion should be granted.

The undersigned will begin by discussing the issue of whether the Plaintiff's allegations state any constitutional claims, before addressing other defenses.

**B. Grounds Asserted in Defendants' Motion**

**1. Eighth Amendment Excessive Force Claims**

Plaintiff asserts that Defendants Humphrey, Williams, and Hill violated his Eighth Amendment right to be free from excessive force during the July blood draw, both because of what Plaintiff alleges was an "unlawful" blood draw, and during the escort to and from the infirmary.  In order to make out a claim of excessive force that violates the Eighth Amendment, an inmate must allege conduct that would satisfy both an objective and a subjective component of such a claim.  "The objective component requires the pain inflicted to be 'sufficiently serious,'" while "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991) and *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  Here, Plaintiff's allegations are insufficient to state a claim of excessive force under the Eighth Amendment, because grabbing Plaintiff's arm and drawing his blood by force was not objectively unreasonable, and none of the allegations suggest that it was done "maliciously and sadistically for the very purpose of causing harm."  *Id.*, 631 F.3d at 383 (quoting *Hudson v. McMillian*, 503 U.S. at 6 (internal quotation marks omitted)).

**a. No Eighth Amendment Violation For Blood Draw**

Plaintiff alleges in his complaint that he was informed by the Defendants that he did not have the option of refusing the blood test, because it was "mandatory." Objectively, Plaintiff's allegations do not support a conclusion that the pain he experienced from the blood draw itself was "sufficiently serious" or that the amount of force was used more than necessary to secure his compliance with the blood draw, and

to hold him in place while the nurse completed the task of drawing his blood. This Court reached the same conclusion in Case No. 1:17-cv-72. *See also Boreland v. Superintendent Vaughn*, 1993 WL 62707 at *6 (E.D. Penn. March 3, 1993)(holding that forced blood draw of inmate who claimed that needle caused severe pain, dizziness, weakness throughout his body, painful swelling in his hand, and left a scar, did not constitute a violation of the Eighth Amendment, because the "use of a needle to draw blood is hardly the cruel and unusual punishment contemplated by the Eighth Amendment"); *Goncalves v. Beshear*, 2010 WL 2178516 at *8 (W.D. Ky. May 26, 2010) (pretrial detainee failed to show injury or violation of Eighth Amendment in having blood drawn to test for sexually transmitted diseases); *Leavitt v. Wickham*, 2013 WL 1753009 at *2 (D. Nev. April 23, 2013)(noting that "blood draws are a routine fact of modern life and inmates 'have been lawfully subject to much more severe intrusions of their corporeal privacy than a sterile blood draw conducted by a trained medical professional,'" quoting *United States v. Kincade*, 379 F.3d 813, 837 (9th Cir. 2004) and citing *Hamliton v. Brown*, 630 F.3d 889, 896-897 (9th Cir. 2011)).

Plaintiff's allegations also fail to demonstrate any subjective intent to cause him harm during the blood draw, to the extent he alleges that the nurse "jammed" the needle into his arm, and when she could not obtain a sufficient blood sample, "jammed" the needle into his hand instead. *See e.g., Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011)(holding that claim that use of physical force to extract blood sample violates the Eighth Amendment fails as a matter of law where plaintiff failed to allege more than that he was handcuffed and restrained to effect the blood test, and did not allege pain beyond what would be expected from the needle stick); *Sanders v. Coman*, 864 F.

Supp. 496, 499-501 (E.D.N.C. 1994)(no Eighth Amendment violation where prison officials used reasonable force to collect DNA samples from unwilling prisoners); *Nawrocki v. Linder*, 2008 WL 4533681 at *2-4 (W.D. Wis. March 7, 2008) (dismissing on initial screening Eighth Amendment claim based upon painful blood draw that allegedly caused seizure, because the fact that defendant told plaintiff she knew that it hurt to have a needle placed in his arm is not evidence that she intended to cause him to experience pain unnecessarily, and plaintiff could not show that defendant intended him to suffer serious injury, that she knew that serious injury was highly likely to result).

### b. No Eighth Amendment Violation During Escort

Although the blood draw itself does not state a claim under the Eighth Amendment, Plaintiff also alleges that some Defendants[3] used excessive force during the escort to and from his housing unit and the infirmary when his arms, wrist and fingers were bent "excessively causing me pain and I requested medical treatment and I was told by nurse Reiter that I would not be treated due to me filing a lawsuit against her…." (Doc. 18 at 4). In addition to the momentary pain that Plaintiff alleges he experienced due to his arms, wrist and fingers being "bent" during his escort, Plaintiff alleges that the excessively tight handcuffs resulted in "swollen" wrists and "lacerations." Despite that additional allegation of injury, Plaintiff's allegations of excessive force during his escort still fail to state any claim under the Eighth Amendment.

---

[3]Although Plaintiff does not specifically identify which Defendant(s) applied handcuffs or physically escorted him back to his housing unit, the undersigned infers, based upon the allegation that Defendants Lt. Humphrey, C/O Williams and 5-6 suppression team members escorted him to the infirmary, that the same individuals escorted him back. Plaintiff's specific claim that Defendants Humphrey and Williams violated his Eighth Amendment right to be free from excessive force adds to this reasonable inference. However, there is no indication that Nurse Hill was involved in the escort.

It is true that the improper use of handcuffs can state an Eighth Amendment claim, and that such cases are often resolved on summary judgment. However, in order to state a claim, the plaintiff must allege both physical injury and – importantly – that he informed the Defendants that the handcuffs were too tight and they deliberately ignored his complaints. In his amended complaint, Plaintiff primarily complains about his arms, wrists, and fingers being "bent excessively" while he was being forcibly escorted against his will to the infirmary for the blood draw. The only alleged injury resulted from the handcuffs. However, he does not allege that he informed any Defendant that the handcuffs were excessively tight, or that they refused to loosen his handcuffs. Absent that allegation of a subjective intent to harm with excessively tight handcuffs, Plaintiff's complaint is insufficient as a matter of law to state a claim.

In addition, although the swelling and lacerations from the handcuffs constitute a greater injury than Plaintiff alleged in Case No. 1:17-cv-72,[4] his allegations still fail to allege more than a *de minimis* injury, falling short of the objective component required under the Eighth Amendment. *See Jones Bey v. Johnson,* 248 Fed. Appx. 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are *de minimis* injuries under the Eighth Amendment). Although it is unnecessary for an inmate to show any "significant" injury to prove the objective component of an Eighth Amendment claim, the extent of the injury remains a factor to be considered in determining whether the assertion of force was objectively unreasonable. *See Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1178 (2010). Moreover, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9.

_____

[4]Plaintiff states that an x-ray was ordered but notably, does not allege that the x-ray revealed any broken bones.

The Sixth Circuit has addressed the improper use of handcuffs or leg restraints on numerous occasions, under both the Eighth Amendment and the Fourth Amendment. In either type of case,

> a plaintiff must allege and prove "1) "some physical injury from the handcuffing' and 2) that 'officers ignored plaintiff's complaints that the handcuffs were too tight.' " *Anderson v. Theibert*, 2017 WL 3140581, at *2 (6th Cir. Feb. 27, 2017) (quoting *Lyons v. City of Xenia*, 417 F.3d 565, 576 (6th Cir. 2005)). However, "[a] factor that is not crucial to an analysis of a claim for excessive force in violation of the Fourth Amendment is the extent of the injury inflicted," whereas "this factor is relevant to a claim brought under the Eighth Amendment for cruel and unusual punishment." *Baskin v. Smith*, 50 Fed.Appx. 731, 737 (6th Cir. 2002) (collecting cases). This is because the hallmark of an Eighth Amendment claim is "the unnecessary and wanton infliction of pain against prisoners," *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), while an excessive force claim under the Fourth and Fourteenth Amendments "operates on a sliding scale" of reasonableness. *Shreve v. Franklin Cty.*, 743 F.3d 126, 134 (6th Cir. 2014).

*Matthews v. Copeland*, 286 F.Supp.3d 912, 916 (M.D.Tenn. 2017)(granting summary judgment to defendants in part because the plaintiff's injuries from ankle shackles (swelling and lacerations) were too *de minimis* to support Eighth Amendment claim); *Peterson v. Johnson*, 2011 WL 1627924, at *6 (W.D. Mich. 2011)("Minor injuries such as bruises and swelling are generally insufficient to support a claim under the Eighth Amendment's Cruel and Unusual Punishments Clause, citing *Silguero v. Acheson,* No. 7:08–cv–201, 2009 WL 56341, at * 2 (N.D.Tex. Jan.9, 2009) (collecting cases)).

## 2. Eighth Amendment Deliberate Indifference Claim

Plaintiff alleges that Defendant Nurses exhibited deliberate indifference to his serious medical needs. In his amended complaint, Plaintiff alleges that he brought "to the attention of Nurse Hill during the blood draw that he was in need of medical

9

treatment," implicitly due to the tight handcuffs, but his plea fell on deaf ears and she provided no treatment. (Doc. 18 at 2). With respect to Nurse Reiter, Plaintiff alleges that *after* the blood draw, "while being escorted" back to his housing unit, he "requested medical treatment" but she explicitly refused to provide any treatment, citing his litigation history. (Doc. 18 at 4). In another portion of the same pleading, Plaintiff alleges that Nurse Reiter "came to plaintiff['s] cell after [the blood draw] and plaintiff informed her that he was in need of medical treatment due to his wrists, arms and hand feeling like [they] was broke and his pleas for medical help fell on deaf ears." (Doc. 18 at 2).

In Case No. 1:17-cv-72, the undersigned dismissed Plaintiff's deliberate indifference to medical needs claim in part because there was no allegation that Plaintiff had suffered any actual injury beyond the pain of the blood draw, which does not constitute a serious medical need. In that case, Plaintiff also had alleged that his wrist "felt" broken and that the defendants failed to provide him with an x-ray to confirm that there was no break, similar to the allegations against Nurse Reiter in this case. However, the undersigned dismissed the prior case because Plaintiff had attached grievances to his complaint that confirmed that he failed to complain about any injury or the alleged refusal to provide an x-ray.[5] The undersigned also found dismissal was appropriate because Plaintiff did not allege in Case No. 1:17-cv-72 that he notified any of the named Defendants of the alleged pain in his wrist, or that the same individuals denied him treatment.

Plaintiff's current complaint attempts to cure those prior deficiencies, insofar as he alleges actual injury (swollen and lacerated wrists), and a request for treatment from

_____

[5]No similar grievances or any other exhibits were attached to the complaint filed in this case.

both Nurse Defendants. Plaintiff also alleges that he received treatment two days later by a third nurse (Nurse James), who provided ice and pain medication, and ordered an x-ray in accordance with Plaintiff's earlier request. Notwithstanding his slightly more detailed allegations as compared to Case No. 1:17-cv-72, Defendants' motion to dismiss should still be granted, because Plaintiff's allegations remain insufficient as a matter of law to state a claim.

The pain of a blood draw is not a sufficiently serious injury, so failure to treat the resulting pain from that event could not support a deliberate indifference claim. Likewise, Plaintiff's alleged injury of swollen wrists and lacerations from the handcuffs simply is not a "sufficiently serious" medical need that was "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted). Moreover, Plaintiff alleges that he received all the treatment that he requested, including an x-ray (which plaintiff does not allege was positive in any way) just two days later.[6] Plaintiff's injuries, as alleged, do not constitute the type of "obvious" and "serous" injury that would require immediate medical attention, and expose Plaintiff to a substantial risk of serious harm in the event that immediate attention was not provided.

In fact, Plaintiff does not allege that he suffered any harm as a result in the two-day delay in treatment for his *de minimis* injuries. In order to prove that a delay in treatment violates Eighth Amendment standards, a plaintiff must generally show some

---

[6]Plaintiff's response in opposition to Defendants' motion to dismiss asserts that he "took the initiative to put in a sick call slip the next day," (Doc. 22 at 7), suggesting that treatment may have been as rapid as the day after the incident. However, in the context of the motion to dismiss, the undersigned views only the allegations in the complaint, which alleges that treatment was provided on July 5.

objectively serious and detrimental effect that was caused by that delay. *See Napier v. Madison Cnty*, 238 F.3d 739, 742 (6th Cir. 2001); *Weatherspoon v. Woods*, 2017 WL 3923335 at *5-6 (6th Cir. Feb. 24, 2017)(affirming dismissal of Eighth Amendment claim based upon six hour delay in dental treatment that allegedly resulted in "disfigurement, disability, [and] worsening and deterioration of [his health," and that leg pain with swelling was also not a sufficiently serious medical need); *Berryman v. Epp*, 73 F.3d 361 (table, text available on Westlaw) (6th Cir. Dec. 12, 1995) (holding that prisoner's "claim that he endured swelling in his left face and severe tooth pain for a period of approximately two months, without alleging and supporting more, is not a serious enough condition for an Eighth Amendment violation"). Here, even the most liberal construction of Plaintiff's allegations cannot support an Eighth Amendment claim based upon inadequate medical care.

### 3. Eighth Amendment Failure to Protect Claim

Plaintiff alleges that Defendants Humphrey, Williams, Warden Erdos, and Deputy Warden Cool all exhibited deliberate indifference to his safety, by either participating in excessive force against him or, in the case of Defendants Erdos and Cool, by finding no further action was required for the minimal use of force employed, thereby "creating a policy or custom under which unconstitutional practices occurred." (Doc. 18 at 5). Because I have concluded that Plaintiff's allegations fail to state an Eighth Amendment claim for excessive force against the Defendants based on the blood draw or the escort to and from the infirmary, it follows that his allegations fail to make out a failure to protect claim against any Defendant.

In addition, a failure to protect claim requires a plaintiff to show both objective and subjective components. It is not possible to conclude from the allegations in the complaint that there was an objectively reasonable risk of "serious harm" from the blood draw or escort, or that any Defendant knew that a substantial risk of serious harm would exist from subjecting Plaintiff to what the Defendants represented to be a mandatory and routine blood test. "[F]or most people [a blood test] involves virtually no risk, trauma, or pain." *Winston v. Lee*, 470 U.S. 753, 760 (1985) (quoting *Schmerber v. California*, 384 U.S. 757, 771 (1966)). In Case No. 1:17-cv-72, this Court dismissed Plaintiff's similar claim concerning the January 4, 2017 blood draw. With respect to the January blood draw, Plaintiff's claim is barred by the principles of claim preclusion and/or issue preclusion.

### 4. First Amendment Claim

Plaintiff brings a First Amendment Retaliation claim against Defendant Humphrey. To prevail on a retaliation claim, Plaintiff must show (1) that he was engaged in constitutionally protected conduct; (2) that adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that there is a causal connection between the first two elements – that is, that the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In his response in opposition to dismissal of this claim, Plaintiff argues that he has sufficiently stated a claim by showing that Lt. Humphrey subjected him to a forced blood draw, resulting in injury, based upon Plaintiff's constitutionally protected conduct of filing lawsuits.

In Plaintiff's amended complaint, he alleges that on July 3, when C/O John Doe first appeared to escort Plaintiff for a blood draw, Plaintiff indicated his objection, and C/O John Doe then summoned Lt. Humphrey. He further alleges that when C/O John Doe and Lt. Humphrey returned to Plaintiff's cell:

> I was told to cuff up and once I cuffed up, I stepped out of my cell and placed my hands on the wall and informed John Doe C/O and Lt. Humphrey [a second time] that I would like to sign a medical refusal form and I was grab by both officers and at this time I was let go and told by Lt. Humphrey that he will be back for my nigger ass and he stated he is gonna teach me a lesson for filing lawsuits against his staff and I was informed that the Warden and Deputy Warden of Operations will cover up for [their] actions, and at in between 9:00-10:10:15 am Lt. Humphrey showed up at my cell with C/O Williams [and] 5 to 6 Suppression Team members dressed in black with shields, face coverings along with a John Doe officer….

(Doc. 18 at 4). Plaintiff was then handcuffed and escorted to the infirmary, where his blood was drawn against his consent.

Lt. Humphrey's alleged use of a racial slur is abhorrent, but is not sufficient to make out an actionable constitutional claim. *See generally, Wingo v. Tenn. Dept. of Corr.*, 499 Fed. Appx. 453, 455 (6th Cir. 2012)(per curiam); *Hursey v. Anderson*, 2017 WL 3528206 at *4 (6th Cir. Mar. 31, 2017). Although Plaintiff has adequately alleged the first component of his claim insofar as he has exercised his constitutional right to file numerous lawsuits in this Court, he has failed to state the second element of his claim – that adverse action was taken that would deter a person of ordinary fitness from continuing to file lawsuits.

Not every adverse action is constitutionally cognizable. *Thaddeas-X*, 175 F.3d at 396. The undersigned concludes that because of the *de minimis* nature of the involuntary blood draw, it is not the type of "adverse action" that would deter someone

of ordinary fitness from continuing to engage in constitutionally protected conduct. *See Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned."); *cf., Thaddeas-X*, 175 F.3d at 398 (noting "adverse action" is contextual and that prisoners may be required to tolerate greater actions against them). A conclusory allegation is not sufficient to state a retaliation claim. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005). Accordingly, Defendant Humphrey is entitled to dismissal of this claim.

### 5. Fourth Amendment Claim

Plaintiff brings a Fourth Amendment claim against Defendants Humphrey, Williams, and Hill. He alleges that each of the identified Defendants violated his "rights to bodily privacy without a penological justification." (Doc. 18 at 5-6). Plaintiff's amended complaint also alleges that when John Doe Correctional Officer first arrived to take Plaintiff to the Infirmary for the mandatory blood draw, Plaintiff "informed this John Doe 1 C/O …that only Chief of the Bureau of Medical and Medical Director and Department Division of Legal Services pursuant to ODRC Policy 68-MED-24 can order a mandatory blood draw which hasn't been done…." (Doc. 18 at 4).

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. Forcing an individual to subject himself to a blood draw may implicate Fourth Amendment concerns, but the evaluation of what is "reasonable" within the boundaries of the Fourth Amendment takes context into consideration, including whether the individual has been placed under arrest or is incarcerated. *See Schmerber v. State of California*, 384 U.S. 757 (1966)(holding that forced taking of blood of petitioner arrested for driving under the

influence did not violate the Fourth Amendment).  "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)(evaluating constitutionality of prison mail and marriage regulations).  Thus, normally invasive practices, like requiring inmates to expose their body cavities for visual inspection, are often permissible when inside the prison walls.  *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 1873 (1979) (finding searches reasonable under the Fourth Amendment).

This Court is limited to consideration of Plaintiff's complaint, and no discovery has yet taken place.  Courts have previously upheld mandatory blood testing in prisons in multiple other contexts, citing a convicted felon's "sharply reduced expectation of privacy, and the minimal intrusion required in taking a blood sample." *United States v. Conley*, 453 F.3d 674, 680 (6th Cir. 2006) (confirming constitutionality of blood draws under the Federal DNA Act, 42 U.S.C. § 14135a); *see also Wilson v. Wilkinson*, 608 F. Supp.2d 891, 895 (S.D. Ohio 2007) (Ohio's DNA Act does not violate Fourth Amendment).  Additionally, courts have upheld that mandatory blood draws in prisons may be conducted in furtherance of drug testing and to control the spread of communicable diseases.  *See Dunn v. White*, 880 F.2d 1188, 1195 (10th Cir. 1989) (holding that prison's substantial interest ascertaining the extent of contagion constitutes a legitimate penological purpose that outweighed reduced privacy interest of prisoner, and justified coercive blood testing for AIDS).

In Case No. 1:17-cv-72, the undersigned granted Defendants' motion to dismiss based on the fact that he had not alleged in his complaint "that the prison lacked any

legitimate penological interest in obtaining the blood sample and, as noted, an ICR attached to his complaint strongly suggests the existence of a valid penological purpose." (Doc. 20 at 10; *see also id.* at 9 (noting the "strong inference…that Plaintiff was informed that he was required to undergo 'mandatory' blood testing as a result of a disciplinary offense in which he was accused of spitting on a correctional officer.").

Plaintiff again attempts to cure the deficiencies found in Case No. 1:17-cv-72. Thus, in the amended complaint herein, Plaintiff clearly alleges that there was "no valid penological interest" in forcing Plaintiff to endure a mandatory blood draw, and that he informed Defendants of his view that the mandatory blood draw was in violation of a prison policy. Because there is no information whatsoever as to any penological reason for the blood draw at this stage of the case, the undersigned concludes that Plaintiff has arguably stated a Fourth Amendment claim. *Accord Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994)(reversing dismissal of pro se prisoner complaint for failure to state a Fourth Amendment claim based on urinalysis, because at pleading stage the record was not sufficiently developed to determine whether plaintiff could prove "no set of facts…that would entitled him to relief").

### 6. Fourteenth Amendment

Plaintiff only briefly references the Fourteenth Amendment, apparently arguing that the July blood draw violated his substantive due process rights.[7] However, "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to

_____

[7]Plaintiff also briefly cites *Washington v. Harper*, 494 U.S. 210, 110 S.Ct. 1028 (1990), a clearly distinguishable case involving the administration of antipsychotic drugs to an inmate against his will without a judicial hearing. The administration of a urine or blood test does not invoke the same procedural or substantive due process concerns as that involuntary medical treatment case.

that specific provision." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).  Having reviewed Plaintiff's claims under both the Fourth and Eighth Amendments, the undersigned concludes that no separate Fourteenth Amendment claim exists.

### 7. Qualified Immunity

Although Plaintiff has arguably stated a claim under the Fourth Amendment against some of the Defendants, the undersigned concludes that all Defendants are entitled to qualified immunity on all claims, including but not limited to the Fourth Amendment claim.  Even though dismissals on the basis of qualified immunity are more frequently made on summary judgment, *see Grose v. Caruso*, 284 Fed. Appx. 279, 283 (6th Cir. 2008)(internal citations omitted), a dismissal may be granted under Rule 12(b)(6) where, as here, the Plaintiff's allegations fail to show that any Defendant violated any clearly established constitutional right of which a reasonable official should have known.

No clearly established law prohibits prison officials from subjecting an inmate to a mandatory blood draw by a nurse or phlebotomist, as is alleged to have occurred herein.  Even if Plaintiff could prove that the July blood draw violated prison policy, that would not show a violation of Plaintiff's Fourth Amendment rights, because there is no controlling Supreme Court precedent and a paucity of Sixth Circuit case law on the precise issues presented by this case.  Of the published and unpublished case law that exists, the overwhelming consensus of courts that subjecting an incarcerated felon to an involuntary blood draw simply does not run afoul of the Eighth or Fourth Amendments, even when the inmate alleges that the blood test is not specifically authorized.  *See Makas v. Miraglia*, 2007 WL 724603 at *16 (S.D.N.Y. Mar. 5, 2007)(holding that

defendants were entitled to qualified immunity for excessive blood testing claim, even if frequency of tests violated state policy), affirmed in part and vacated in part, 300 Fed. Appx. 9 (2d Cir. 2008); cf*., Sumpter v. Wayne County*, 868 F.3d 473 (6th Cir. 2017) (holding that defendant was entitled to qualified immunity because pretrial detainee had no clearly established right to be free from extremely invasive and especially humiliating periodic group strip searches).  Because no controlling law exists that would have put the Defendants on notice that forcing Plaintiff to undergo the blood test violated any established constitutional right, Defendants are entitled to qualified immunity.  *Accord Dotson v. Wilkinson*, 477 F. Supp.2d 838, 850 (N.D. Ohio 2007)(granting Rule 12(b)(6) motion to dismiss on qualified immunity grounds to defendants sued in their individual capacities, where inmate had not demonstrated any constitutional violation under the Eighth Amendment); *McDougald v. Stone*, Case No. 1:17-cv-72, Doc. 20 at 10-12).

### 8.  Eleventh Amendment Immunity

Defendants argue that any claims for monetary damages brought against them in their official capacities are barred by the Eleventh Amendment.  The undersigned agrees.  *See generally Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989).

### 9.  Plaintiff Is Not Entitled to Injunctive Relief

Plaintiff seeks a preliminary injunction and/or temporary restraining order to prevent the alleged unlawful collection of his blood unless it is performed pursuant to ODRC Policy 68-MED-24.  He also asks for a court-ordered x-ray, to direct the Defendants to cease all retaliatory acts and excessive force, and for an immediate transfer to another institution. (Doc. 18 at 6).

In determining whether to issue a preliminary injunction, the Court must examine four factors: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet v. Lexington–Fayette Urban Cty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir. 2000)(additional citation omitted). These factors are not prerequisites, but are factors that are to be balanced against each other. *Id.* (citations omitted).

Plaintiff has failed to meet the requirements for temporary injunctive relief. Considering the recommended dismissal of this lawsuit, he does not have a strong likelihood that he will prevail on his claims, nor has he alleged any specific facts to show that immediate and irreparable injury, loss, or damage will result if the injunction is not issued. When an injunction is sought by an inmate against state prison officials, the Sixth Circuit has noted that findings of fact in support of any granted relief are "especially critical" since such an order would necessarily intrude "significantly into the prerogatives of state correctional officials." *See Glover v. Johnson,* 855 F.2d 277, 284 (6th Cir. 1988); *Kendrick v. Bland,* 740 F.2d 432, 438, n. 3 (6th Cir. 1984)("[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities")(internal quotation and citation omitted).

In addition, an inmate has no constitutionally protected right to a transfer or to be assigned to a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). The

undersigned notes this is not the first time that Plaintiff has requested transfer, although he has cited other reasons in other cases.

> [P]laintiff's allegations, consistent through his numerous complaints and amended complaints raise a common issue – he simply desires monetary relief, raises specious claims that he is in fear for his life and desires a transfer from SOCF to another facility for incarceration. Plaintiff's self-serving statements do not provide a factual basis or no evidence has been provided that harm will come to in the future.

*McDougald v. Mahlman*, Case No. 1:16-cv-317, 2016 WL 6157625, at *2 (S.D.Ohio, 2016)(denying requested transfer and other preliminary injunctive relief).

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the motion of Defendants to dismiss Plaintiff's Amended Complaint (Doc. 20) be **GRANTED**, and that this case be dismissed. **IT IS FURTHER RECOMMENDED THAT** the motion of Defendants to dismiss the original complaint (Doc. 10) be **DENIED AS MOOT**.

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

JERONE MCDOUGALD,                                        Case No. 1:17-cv-464

            Plaintiff,                                              Barrett, J.
                                                                  Bowman, M.J.
      v.

RON ERDOS, et al.,

            Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).